UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| IRVING D. JUMPING EAGLE,<br><br>Plaintiff,<br><br>-vs-<br><br>LLOYD WARREN and KATIE WARREN,<br><br>Defendants. | CIV 18-4131<br><br>ORDER GRANTING LEAVE TO<br>PROCEED IN FORMA PAUPERIS,<br>§ 1915(A) SCREENING, and<br>DENYING MOTION FOR COUNSEL |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff Irving D. Jumping Eagle ("Jumping Eagle") filed a *pro se* Petition, an Application to Proceed without Prepayment of Fees, a Prisoner Trust Account Report, and a Motion for Court-Appointed Counsel. (Docs. 1, 4, 5, 6.) He also filed a motion for production of court records and a motion for judicial notice of adjudicative facts. (Docs. 7, 8.) Subsequently, Jumping Eagle requested additional time to review the state-court record and amend his Petition. (Doc. 11.) The Court granted the request for additional time, allowing Jumping Eagle until May 1, 2019, to file a motion to amend with a proposed Amended Complaint. (Doc. 12 at 8.) But he did not file a motion to amend or an Amended Complaint and, therefore, the Court will screen Jumping Eagle's initial Petition.

## BACKGROUND

Jumping Eagle, the biological father of the minor child, I.L.J.E., filed a Petition to invalidate the state court custody proceedings involving the child. He brings the Petition pursuant to 25 U.S.C. § 1914 of the Indian Child Welfare Act ("ICWA" or "Act"), 25 U.S.C. §§ 1901 *et seq.*, seeking to invalidate an order entered by the Third Judicial Circuit Court in Brookings County, South Dakota, appointing Defendant Lloyd V. Warren, the child's uncle, and Defendant Katie L. Warren, the child's aunt, guardians of I.L.J.E. (Doc. 1-1, "Guardianship Order"). The facts relevant to Jumping

Eagle's claims are set forth in the Court's April 2, 2019 Memorandum Opinion and Order. (Doc. 12.) Instead of restating all of those facts, the Court incorporates them herein by reference.

## DISCUSSION

In support of his request to vacate the Guardianship Order, Jumping Eagle alleges in his Petition that the trial court failed to inquire into and determine Jumping Eagle's indigent status and eligibility for court appointed counsel to assist him in the proceedings, in violation of 25 U.S.C. § 1912(b).[1] Second, Jumping Eagle claims the trial court "continued to ignore" the ICWA by receiving evidence regarding the criminal prosecution of Jumping Eagle. He says that this led to the state court's decision to award custody of I.L.J.E. outside the tribal and cultural settings in violation of 25 U.S.C. § 1915.[2] Finally, Jumping Eagle alleges that he was denied his right to appeal to the

---

[1] The statute provides:

(b) Appointment of counsel

> In any case in which the court determines indigency, the parent or Indian custodian shall have the right to court-appointed counsel in any removal, placement, or termination proceeding. The court may, in its discretion, appoint counsel for the child upon a finding that such appointment is in the best interest of the child. Where State law makes no provision for appointment of counsel in such proceedings, the court shall promptly notify the Secretary upon appointment of counsel, and the Secretary, upon certification of the presiding judge, shall pay reasonable fees and expenses out of funds which may be appropriated pursuant to section 13 of this title.

25 U.S.C.A. § 1912(b).

[2] The statute provides, in relevant part:

(a) Adoptive placements; preferences

> In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families.

(d) Social and cultural standards applicable

2

South Dakota Supreme Court, and to this Court, because he did not have counsel or a record to assist him.

## A. Jurisdiction

"[F]ederal courts are courts of limited jurisdiction." *United States v. Afremov*, 611 F.3d 970, 975 (8th Cir. 2010). A district court "has a special obligation to consider whether it has subject matter jurisdiction in every case." *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011).

The subject matter jurisdiction of this Court may derive from the citizenship of the parties, *see* 28 U.S.C. § 1332, a federal question posed by the underlying lawsuit, *see* 28 U.S.C. § 1331, or special circumstances covered by federal statute. Jumping Eagle's asserted basis for jurisdiction is a federal statute, 25 U.S.C. § 1914, which provides:

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

25 U.S.C.A. § 1914.

The Circuit Courts that have addressed the issue have held "that federal district courts have jurisdiction under 28 U.S.C. § 1331 over complaints in which a plaintiff alleges a violation of §§ 1911, 1912, or 1913." *Morrow v. Winslow*, 94 F.3d 1386, 1394 (10th Cir. 1996) (citing *Roman–Nose v. New Mexico Dep't of Human Servs.*, 967 F.2d 435, 437 (10th Cir. 1992)); *see also Doe v. Mann*, 415 F.3d 1038, 1047 (9th Cir. 2005) (holding that, through ICWA, "Congress explicitly authorized federal courts to invalidate state court judgments in this limited area [of Indian child dependency and custody judgments].").

---

> The standards to be applied in meeting the preference requirements of this section shall be the prevailing social and cultural standards of the Indian community in which the parent or extended family resides or with which the parent or extended family members maintain social and cultural ties.

25 U.S.C.A. § 1915 (a) and (d).

3

Here, Jumping Eagle alleges, in part, that the South Dakota state court did not properly comply with the requirements of § 1912 of the ICWA in granting the defendants' petition for guardianship of I.L.J.E. Thus, the Court concludes that subject matter jurisdiction exists in this case.

**B. <u>Motion to Proceed In Forma Pauperis</u>**

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court may, however, accept partial payment of the initial filing fee where appropriate. Therefore, "'[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan.'" *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A) the average monthly deposits to the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Having reviewed Jumping Eagles's financial affidavit, the Court finds that he satisfies the requirements to proceed without prepayment of fees under 28 U.S.C. § 1915(a). Jumping Eagle's reported average monthly deposits to his prisoner trust account are $167.01 and the average monthly balance is $77.02 (Doc. 5 at 1.) Based on this information, the Court grants Jumping Eagle leave to proceed in forma pauperis provided he pays an initial partial filing fee of $33.40, which is 20 percent of $167.01. Because Jumping Eagle paid $5.00 when he filed his Petition, doc. 2, that amount will be subtracted from the initial filing fee. Therefore, Jumping Eagle must pay this initial partial filing fee in the amount of $28.40 by November 1, 2019, or his complaint will be dismissed without prejudice.

Jumping Eagle must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the Court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, the installments will be collected pursuant to this procedure.

The Clerk of the Court will send a copy of this order to the appropriate financial official at Jumping Eagle's institution. Jumping Eagle remains responsible for the entire filing fee, as long as he is a prisoner, even if the case is dismissed at some later time. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997).

### C. Screening Pursuant to 28 U.S.C. § 1915(A)

Congress has directed this Court under 28 U.S.C. § 1915(A) to review and screen claims in a complaint being filed in forma pauperis to determine if they are: "(1) frivolous, malicious, or fail[ ] to state a claim upon which relief may be granted; or (2) seek[ ] monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(A)(b).

An action is frivolous if "it lacks an arguable basis either in law or in fact." *Aziz v. Burrows*, 976 F.2d 1158, 1158 (8th Cir. 1992) (quoting *Neitzke v. Williams*, 480 U.S. 319, 324 (1989)). A complaint states a claim upon which relief may be granted if it contains sufficient factual matter, accepted as true to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner*, 404 U.S. 519, 520–521 (1972) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). A reviewing court has the duty to examine a pro se complaint "to determine if the allegations provide for relief on any possible theory." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988). However, a court is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Though some of Jumping Eagle's allegations seem contradictory to the South Dakota Supreme Court's decision in the custody case, the Court must accept Jumping Eagle's non-conclusory allegations in the Petition as true and determine only whether those allegations state a claim for relief pursuant to 25 U.S.C. § 1914. Jumping Eagle asserts that he was denied procedural protections due under the ICWA, and that he received either no counsel or ineffective assistance of counsel during the proceedings, in violation of his statutory rights. At this pleading stage, the Court does not decide the merits of Jumping Eagle's § 1914 claims. The Court concludes that the allegations in Jumping Eagle's Petition contain facts sufficient to state a plausible claim for relief under § 1914 of the ICWA. Accordingly, Jumping Eagle's claims survive initial screening.

### D. Motion to Appoint Counsel

Jumping Eagle also moves the Court to appoint him counsel. (Doc. 6.) "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (citing *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985)). "In civil rights matters the court may, pursuant to 28 U.S.C. § 1915, request an attorney to represent a party if, within the court's discretion, the circumstances are such that would properly justify such a request." *Mosby v. Mabry*, 697 F.2d 213, 214 (8th Cir.1982) (internal quotations and citation omitted).

In determining whether to appoint counsel to a pro se litigant's civil case, the district court considers the complexity of the case, the ability of the indigent litigant to investigate the facts, the existence of conflicting testimony, and the indigent's ability to present his claim. *Stevens*, 146 F.3d at 546 (citation omitted). The facts of Jumping Eagle's claims are not complex and, at this stage in the proceedings, the Court does not deem it necessary to appoint counsel. Thus, Jumping Eagle's motion to appoint counsel is denied. Accordingly,

IT IS ORDERED:

1. Plaintiff's application to proceed in forma pauperis (Doc. 4) is granted and he must pay $28.40 by November 1, 2019, or his complaint will be dismissed without prejudice.

2. Plaintiff's motion to appoint counsel (Doc. 6) is denied.

3. Plaintiff's motion for production of court records (Doc. 7) and motion for judicial notice of adjudicative facts (Doc. 8) are denied.

4. The institution having custody of Jumping Eagle is directed that whenever the amount in Jumping Eagle's trust account exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Jumping Eagle's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full.

5. The Clerk shall send blank summons forms and Marshal Service Form (Form USM-285) to Jumping Eagle so that he may cause the complaint to be served upon defendants.

6. Jumping Eagle shall complete and send the Clerk of Court a separate summons and USM-285 form for each defendant. Upon receipt of the completed summonses and USM-285 forms, the Clerk of Court will issue the summonses. If the completed summonses and USM-285 forms are not submitted as directed, the complaint may be dismissed.

7. The United States Marshal Service shall serve the completed summonses, together with a copy of the Petition (Doc. 1) and this Order, upon the defendants.

8. Defendants will serve and file an answer or responsive pleading to the Petition on or before 21 days following the date of service.

9. Jumping Eagle will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

Dated this 19th day of September, 2019.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK