UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| | \* | |
| IRVING D. JUMPING EAGLE, | \* | CIV 18-4131 |
| | \* | |
| Plaintiff, | \* | |
| | \* | |
| -vs- | \* | |
| | \* | MEMORANDUM OPINION |
| LLOYD WARREN and KATIE WARREN, | \* | AND ORDER |
| | \* | |
| Defendants. | \* | |
| | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff Irving D. Jumping Eagle ("Jumping Eagle") filed a *pro se* Petition to invalidate the state court guardianship proceedings involving his child, I.L.J.E. He brought the Petition pursuant to 25 U.S.C. § 1914 of the Indian Child Welfare Act ("ICWA" or "Act"), 25 U.S.C. §§ 1901 *et seq*., seeking to invalidate an order entered by the Third Judicial Circuit Court in Brookings County, South Dakota, appointing Defendant Lloyd Warren, the child's uncle, and Defendant Katie Warren, the child's aunt, guardians of I.L.J.E ("Guardianship Order").

Defendants moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. (Doc. 36.) The Court granted Jumping Eagle's request for court-appointed counsel to represent him in these proceedings. (Doc. 39.) The motion for summary judgment is fully briefed. For the following reasons, the motion will be granted.

## BACKGROUND

Unless otherwise noted, the following facts are uncontested.

Jumping Eagle is the biological father of I.L.J.E. Alicia Rhae Jumping Eagle ("Alicia"), now deceased, was the biological mother of I.L.J.E. Defendants are the maternal aunt and uncle of I.L.J.E. I.L.J.E. was born on December 22, 2014. I.L.J.E. is an Indian child as defined in ICWA. I.L.J.E. is an enrolled member of the Oglala Sioux Tribe. On or about April 3, 2017, Jumping Eagle killed Alicia by stabbing her. Jumping Eagle was arrested in connection with Alicia's death on April 4, 2017.

At the time of Alicia's killing and Jumping Eagle's arrest, I.L.J.E., at his mother's request, was staying with Defendants for the weekend.  On April 6, 2017, Defendants filed a Petition for Temporary Guardianship in the Circuit Court of the Third Judicial Circuit in Brookings County, South Dakota, seeking temporary guardianship of I.L.J.E.  In an affidavit attached to the petition, Defendants explained that they were the child's maternal aunt and uncle, and no other close relative was available to care for the child.[1]  *Matter of Guardianship of I.L.J.E.*, 921 N.W.2d 463, 466 (S.D. 2018).

On April 7, 2017, the state trial court entered an Order Appointing Temporary Guardian and Conservator Pursuant to SDCL 29A-5-210, appointing Defendants as temporary co-guardians of I.L.J.E.  No hearing was held prior to the state trial court's temporary guardianship order issued on April 7, 2017, and Jumping Eagle did not participate in the temporary guardianship proceedings. On April 10, 2017, Defendants filed a Proof of Notice in the underlying state court guardianship proceedings, stating that they sent copies of the prior filings in the proceedings to Jumping Eagle. The Sheriff's Return was filed on April 12, 2017.  Jumping Eagle did not file anything in response to the temporary guardianship order.

On April 20, 2017, Jumping Eagle signed a Power of Attorney indicating his intent to give custody of I.L.J.E. to his sister, Dr. Sara Jumping Eagle, a tribal member.

Defendants assert that neither they nor the state trial court knew or had reason to know that I.L.J.E. was an Indian child at the time of the temporary guardianship proceedings. Jumping Eagle contends that the surname Jumping Eagle should have put Defendants and the circuit court judge

---

[1] The affidavit stated:
We believe that [the child's father's] parents are both deceased. The parents of Petitioner, Lloyd V. Warren and the deceased Alicia, are also deceased. The Petitioner, Lloyd V. Warren has a sister, Katie Lovstad, who resides in Baltic, South Dakota. We believed that [the child's father] has a sister who lives in Nebraska, although we are not aware of her name or how to contact her. We also believe that he has a sister that lives in North Dakota, although we have been informed that she is currently in Europe. We have not spoken with or met either of his sisters in the past. We know of no other close relatives of either side of the family that can take immediate care of the minor child, [I.L.J.E.]. The other minor child of the decease[d], [C.W.], is with his biological father[.]

*Matter of Guardianship I.L.J.E.*, 921 N.W.2d at 466 n.2.

2

on notice that I.L.J.E. was an "Indian child" as defined by ICWA.  Neither of the Defendants are Indians.

On June 16, 2017, Defendants filed a Petition for Appointment of Co-Guardians and Co-Conservators in state court, seeking permanent guardianship of I.L.J.E.  Defendants claimed that I.L.J.E. could not care "for his health, care, safety, habilitation or therapeutic needs . . . ."  Notice of the petition for permanent guardianship was served by hand-delivery to Jumping Eagle by the Sheriff of Brookings County on June 22, 2017.  (Doc. 48-3.)  The Order for Hearing that also was served by hand-delivery to Jumping Eagle provided that interested persons could apply for permission to intervene in the proceedings.  (Doc. 48-1.)

On June 27, 2017, Kasey L. Olivier and Ashley M. Miles Holtz of Heidepriem, Purtell, Siegel & Olivier, LLP, Sioux Falls, South Dakota, filed a Notice of Appearance on behalf of Jumping Eagle in the state court guardianship proceedings.

On July 6, 2017, Defendants filed a Proof of Notice to the Oglala Sioux Tribe and Child Protective Services ("CPS") in the state court guardianship proceedings.

On July 12, 2017, Jumping Eagle asked the state trial court to accept his April 20, 2017, Power of Attorney indicating his intent to give custody of I.L.J.E. to his sister, Dr. Sara Jumping Eagle. *In re Guardianship of I.L.J.E.*, 921 N.W.2d 63, 466 (S.D. 2018).  Dr. Sara Jumping Eagle never filed a formal petition requesting guardianship of I.L.J.E.  *Id.* at 467.

The state court held a status hearing on July 17, 2017. Jumping Eagle appeared by and through his retained counsel at the hearing.  Jumping Eagle did not personally attend the hearing, but his counsel did not object or file a motion requesting that Jumping Eagle be personally present.  The South Dakota Supreme Court stated that Defendants were not aware I.L.J.E. was an enrolled member of the Oglala Sioux Tribe.  *In re Guardianship of I.L.J.E.*, 921 N.W.2d at 467.  The question whether ICWA applied arose during the July 17 status hearing.  The state trial court asked if this was an ICWA case, and Jumping Eagle's lawyer responded that ICWA did not apply to this case. (Doc. 38-11, Hearing Transcript, pp. 4-5.)  The state court determined a need existed to extend Defendants' temporary guardianship for 90 days, and refused Jumping Eagle's request to place I.L.J.E. with Dr. Sara Jumping Eagle.  The hearing on the permanent guardianship was scheduled for October 6, 2017.

On July 21, 2017, the state court entered an Order Extending Temporary Co- Guardianship and Co-Conservatorship Pursuant to SDCL 29A-5-210, extending the temporary appointment of Defendants as co-guardians of I.L.J.E. for 90 days.  (Doc. 38-12.)

On July 25, 2017, Dana Hanna of Hanna Law Office, P.C., Rapid City, South Dakota, filed a Motion to Intervene and a Notice of Appearance on behalf of Oglala Sioux Tribe in the state court guardianship proceedings.  On August 4, 2017, the state trial court entered an Order Granting Oglala Sioux Tribe's Motion to Intervene.  The Tribe participated in the proceedings, but it did not object to the guardianship or request transfer to tribal court under ICWA.

On September 12, 2017, Jumping Eagle entered a guilty plea in criminal file 49 CRI 17-002636 to Manslaughter in the First Degree for the killing of Alicia.  On January 30, 2018, Judgment was entered sentencing Jumping Eagle to one hundred (100) years in prison.  (Doc. 38-16.)

The hearing on the permanent guardianship was held on October 6, 2017.  Jumping Eagle appeared via interactive video conferencing (ITV) from the Minnehaha County Detention Center and by and through his retained counsel at the evidentiary hearing or court trial on Defendants' petition for permanent guardianship; Jumping Eagle's lawyers were present in the courtroom during the hearing and actively participated in the hearing.

During the October 6, 2017, evidentiary hearing before the state trial court, the Oglala Sioux Tribe appeared by and through counsel, Dana Hanna, who was personally present and participated in the proceedings.  Also during the hearing, the parties stipulated that the state guardianship proceedings met the definition of a "foster care placement" pursuant to ICWA, and thus ICWA applied to the proceedings.  The parties' stipulated to an ICWA expert, Luke Yellow Robe.  Yellow Robe and Jumping Eagle's sister, Dr. Sara Jumping Eagle, testified that Defendants are part of I.L.J.E.'s *tiospaye* or "extended family" as defined by Lakota culture.  In addition to the testimony of Luke Yellow Robe and Dr. Sara Jumping Eagle, Defendants, and some of Defendants friends and relatives testified at the October 6 hearing.

On October 26, 2017, Defendants filed their Proposed Findings of Fact and Conclusions of Law in the underlying state court guardianship proceedings and notified Jumping Eagle of this filing on the same date.

4

On November 9, 2017, Jumping Eagle, by and through his retained counsel, filed Objections to the Proposed Findings of Fact and Conclusions of Law and Counter Proposed Findings of Fact and Conclusions of Law in the state court guardianship proceedings, which the state trial court denied on November 15, 2017.  The Tribe did not file objections to Defendants' Proposed Findings of Fact and Conclusions of Law, and it did not propose its own findings or conclusions or bid for a different guardian for I.L.J.E.

On November 15, 2017, the state trial court entered Findings of Fact and Conclusions of Law and an Order Appointing Co-Guardians and Co-Conservators (the "permanent guardianship order"), appointing Defendants as co-guardians to I.L.J.E.  The state trial court found that the expert testimony of Luke Yellow Robe was credible and that it established clear and convincing evidence that custody of I.L.J.E. by Jumping Eagle is likely to result in serious emotional or physical damage to I.L.J.E.  (Doc. 38-20, p. 3-4, Finding of Fact 35.)  As required by 25 U.S.C. § 1912(e), the state trial court concluded that expert testimony "supported by clear and convincing evidence" that custody of I.L.J.E. by Jumping Eagle is likely to result in serious emotional or physical damage to I.L.J.E,. "and therefore it is in the best interest of the minor child that the minor child be placed with the Petitioners who are the maternal extended family members."  (Doc. 38-20, p. 6, Conclusion of Law  13.)

On December 15, 2017, Jumping Eagle, by and through his retained counsel, filed a Notice of Appeal in the underlying state court guardianship proceedings, appealing the state trial court's interim guardianship order and permanent guardianship order to the South Dakota Supreme Court. Jumping Eagle, by and through his retained counsel, submitted appellant's briefs, presented oral argument, and vigorously advocated for Jumping Eagle's interests before the South Dakota Supreme Court. *In re Guardianship of I.L.J.E.*, 921 N.W.2d 463 (S.D. 2018).  The Tribe did not appear in the proceedings before the South Dakota Supreme Court.

Jumping Eagle, by and through his retained counsel, argued on appeal to the South Dakota Supreme Court that the state trial court violated Jumping Eagle's constitutional and statutory rights including the right to a court-appointed attorney. Jumping Eagle also argued on appeal that the state trial court improperly applied 25 U.S.C. § 1915 in appointing Defendants as co-guardians of I.L.J.E. *In re Guardianship of I.L.J.E.*, 921 N.W.2d at 473–74.

5

On August 28, 2018, the parties presented oral arguments before the South Dakota Supreme Court on Jumping Eagle's appeal.

On December 12, 2018, the South Dakota Supreme Court issued a written opinion affirming the state trial court's appointment of Defendants as co-guardians of I.L.J.E. Jumping Eagle did not appeal the decision of the South Dakota Supreme Court to the United States Supreme Court. Both parties have asked the Court to take judicial notice of the Supreme Court's opinion in *In re Guardianship of I.L.J.E.*, 921 N.W.2d 463 (S.D. 2018). Defendants also request this Court to take judicial notice of the state circuit court records related to this case in *In re Guardianship of I.L.J.E.*, state file number 05 GDN 17-000005, Third Judicial Circuit Court in Brookings County, South Dakota, and in *State of South Dakota v. Irving Duane Jumping Eagle*, state file number 49 CRI 17-002636, Second Judicial Circuit in Minnehaha County, South Dakota; and the state appellate court records related to this case in *In re Guardianship of I.L.J.E.*, state appellate No. 28479, Supreme Court of South Dakota.

The Eighth Circuit has recognized that it is appropriate for federal district courts to take judicial notice of state court files when they are relevant to issues in federal court. *See Knutson v. City of Fargo*, 600 F.3d 992, 1000 (8th Cir. 2010). Here the state court files are relevant, and the parties' requests for judicial notice are granted pursuant to Rule 201 of the Federal Rules of Evidence.

Instead of restating the facts set forth in the South Dakota Supreme Court's opinion in *In re Guardianship of I.L.J.E.*, the Court incorporates the facts herein by reference.

Jumping Eagle moves to invalidate the guardianship pursuant to ICWA, 25 U.S.C. § 1914. Defendants argue that there are no genuine issues of material fact and ask for summary judgment on Jumping Eagle's claims.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the

burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.,* 838 F.2d 268, 273–74 (8th Cir. 1988). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson*, 477 U.S. at 247–48). All facts presented to the district court by the non-moving party are accepted as true if properly supported by the record. *See Beck v. Skon*, 253 F.3d 330, 332–33 (8th Cir. 2001).

## DISCUSSION

Jumping Eagle argues that state court guardianship proceedings are invalid because Defendants and the state trial court violated §§ 1912 and 1915 of ICWA. Specifically, Jumping Eagle asserts that the state trial court failed to inquire into and determine Jumping Eagle's indigent status and eligibility for court appointed counsel to assist him in the proceedings, in violation of 25 U.S.C. § 1912(b), and that he did not receive notice of the temporary guardianship order until after it was entered. Jumping Eagle also challenges the state court's analysis of the appropriate placement of I.L.J.E. under § 1915. Jumping Eagle additionally contends that the proceedings are invalid because he was not allowed to appear in person at the October 6, 2017 evidentiary hearing.

In the motion for summary judgment, Defendants first contend that this action is barred by the Full Faith and Credit Clause of the United States Constitution which compels federal courts to recognize valid state court judgments. Defendants argue that res judicata or claim preclusion bar this Court from reconsidering claims already decided by the South Dakota Supreme Court. Addressing Jumping Eagle's claims on the merits, Defendants assert that any perceived errors with the guardianship proceedings were remedied by the time of the July 17, 2017 status hearing, where Jumping Eagle had counsel and notice of the hearing. Regarding Jumping Eagle's appearance by ITV at the October 6, 2017 permanent guardianship hearing, Defendants assert that his personal appearance was not required because it was not a criminal proceeding where Jumping Eagle's liberty was at stake, and his parental rights were not terminated. Further, the South Dakota Supreme Court

7

held that due process is not violated when prisoners appear via ITV in child custody proceedings. *In re Guardianship of I.L.J.E.*, 921 N.W.2d at 471–72.

## I.  ICWA

Central to ICWA is a "dual jurisdictional scheme" aimed at ensuring that Indian tribes have a role in adjudicating and participating in child custody proceedings involving Indian children domiciled both on and off the reservation.  *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36 (1989).  ICWA provides, in relevant part, that an Indian tribe shall have exclusive jurisdiction over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where jurisdiction is otherwise vested in the State by existing Federal law. 25 U.S.C. § 1911(a).  If the Indian child is not domiciled on a reservation, the tribe and the State of the child's residence or domicile share concurrent jurisdiction. *Id.* § 1911(b). Where, as here, the State exercises its concurrent jurisdiction over child guardianship proceedings involving an Indian child, ICWA provides for a variety of procedural guarantees to ensure that the Indian tribe is given adequate notice and opportunity to participate in those proceedings.  *See id.* § 1912; *Mississippi Band of Choctaw Indians*, 490 U.S. at 36.

Congress provided a remedy for violations of §§ 1911, 1912 and 1913 of ICWA.  Section 1914 states:

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911,[2] 1912,[3] and 1913[4] of this title.

---

[2]  Section 1911 is the jurisdictional provision of ICWA vesting tribal courts with exclusive jurisdiction over reservation-domiciled Indian children and providing for transfer of jurisdiction over non-reservation domiciled children.

[3]  Section 1912 governs involuntary foster care and termination of parental rights proceedings and requires notice to the Indian child's tribe, appointment of counsel for indigent parents or the Indian custodian of the Indian child, and delineates the necessary state court findings to justify a foster care placement or termination of parental rights.

[4]  Section 1913 governs voluntary foster care placements and consents to termination of parental rights and sets out the requirements before a voluntary termination or placement will be honored. This section also allows an Indian parent or custodian to withdraw consent and regain

25 U.S.C.A. § 1914.

The substantive requirements of the ICWA are the placement provisions of the Act in 25 U.S.C. § 1915.[5] *See Mississippi Band of Choctaw Indians*, 490 U.S. at 36 (citing 25 U.S.C. § 1915). These provisions dictate where Indian children should be placed in foster and adoptive homes, absent good cause to the contrary.

## II.  Preclusion Issues

Defendants first argue that Jumping Eagle is barred entirely from bringing this action in federal court pursuant to the Full Faith and Credit clause of the United States Constitution and the Full Faith and Credit Act, 28 U.S.C. § 1738.[6]  Under § 1738, federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Edwards v. City of Jonesboro*, 645 F.3d 1014, 1019 (8th Cir. 2011) (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982)).  The Supreme Court has held that the full faith and credit statute "directs a federal court to refer to the preclusion law of

_____

custody, and to challenge consents obtained through fraud or duress.

[5]  The relevant section provides:
**(b) Foster care or preadoptive placements; criteria; preferences**
Any child accepted for foster care or preadoptive placement shall be placed in the least restrictive setting which most approximates a family and in which his special needs, if any, may be met. The child shall also be placed within reasonable proximity to his or her home, taking into account any special needs of the child. In any foster care or preadoptive placement, a preference shall be given, in the absence of good cause to the contrary, to a placement with--
(i) a member of the Indian child's extended family;
(ii) a foster home licensed, approved, or specified by the Indian child's tribe;
(iii) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or
(iv) an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs.

25 U.S.C.A. § 1915(b).

[6]  In their initial summary judgment brief, Defendants cite no cases that address application of full faith and credit in the ICWA context.

the State in which judgment was rendered." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). If state law would not bar relitigation of an issue or claim decided in the earlier proceeding, then a federal court will not give the state court judgment preclusive effect either. If state law would give the judgment preclusive effect, however, then a federal court also must do so unless it determines that Congress created an exception to § 1738. *Id.* Only if "some exception to § 1738 applie[s]" can a federal court refuse to give a judgment the preclusive effect to which it is entitled under state law. *Id.* An exception "will not be recognized unless a later statute contains an express or implied partial repeal" of § 1738. *Kremer*, 456 U.S. at 468.

South Dakota law precludes relitigation of issues in a second suit when the following four elements are established: "(1) a final judgment on the merits in an earlier action; (2) the question decided in the former action is the same as the one decided in the present action; (3) the parties are the same; and (4) there was a full and fair opportunity to litigate the issues in the prior proceeding." *People ex rel. L.S.*, 721 N.W.2d 83, 89–90 (S.D. 2006).

## A. Alleged Violations of § 1912 are not Precluded

In his response to Defendants' motion for summary judgment, Jumping Eagle points out that there is no legal authority in the Eighth Circuit regarding the interplay between the Full Faith and Credit Act in 28 U.S.C. § 1738 and ICWA cases brought pursuant to § 1914.[7] He urges this Court

---

[7] Few cases have been brought in federal court pursuant to § 1914 of ICWA. One commentator referred to § 1914 as a "toothless saber." B. J. Jones, <u>The Indian Child Welfare Act: In Search of a Federal Forum to Vindicate the Rights of Indian Tribes and Children Against the Vagaries of State Law</u>, 73 N.D. L. Rev. 395, 432 (1997) ("To date, no federal court has invalidated an arguably erroneous state court decision because the majority of federal courts have emasculated their authority to do so under the principles of full faith and credit. Section 1914 has proven to be a toothless saber."). Since then, however, *see In the Matter of the Adoption of C.D.K.*, 629 F. Supp. 2d 1258 (D. Utah 2009) (invalidating a relinquishment and adoption where the procedural requirements of the ICWA were not complied with including a violation of 1913(a)). *See also Brackeen v. Zinke*, 338 F. Supp. 3d 514 (N.D. Tex. 2018). In *Brackeen,* the district court held that ICWA is unconstitutional under the Fifth Amendment's guarantee of equal protection. The court ruled, in part, that applying ICWA to children based on their race even if they are not enrolled members of a Tribe is not narrowly tailored to a compelling government interest. *Id.* at 533, 535–536. A panel of the Fifth Circuit reversed that decision, but the Fifth Circuit's panel decision was vacated after the en banc court granted review. *Brackeen v. Bernhardt*, 937 F.3d 406, 416 (5th Cir.), *reh'g en banc granted*, 942 F.3d 287 (5th Cir. 2019).

to interpret § 1914 of ICWA as Congress authorizing a federal court to be a "court of competent jurisdiction" to review and invalidate, if necessary, state court decisions that violate ICWA.

In support of his argument, Jumping Eagle cites the Ninth Circuit in *Doe v. Mann*, 415 F.3d 1038 (9th Cir. 2005). There, the Ninth Circuit held that § 1914 of ICWA provides the federal courts authority to invalidate a state court foster care placement or termination of parental rights if it is in violation of §§ 1911, 1912, or 1913. *Id.* at 1041, 1047. The Ninth Circuit stated:

> Section 1914 provides that the Indian child, the parent or Indian custodian, or the tribe "may petition any court of competent jurisdiction to invalidate such action." 25 U.S.C. § 1914. The action referred to is a state court action for "foster care placement or termination of parental rights." *Id.* The language of the statute could not be clearer: Congress is authorizing any court of competent jurisdiction to invalidate a state court judgment involving the Indian child. Having concluded that Congress created a federal cause of action over which the federal courts have subject matter jurisdiction under 28 U.S.C. § 1331, it requires no leap for us to conclude further that Congress explicitly authorized federal courts to invalidate state court judgments in this limited arena.

*Doe v. Mann*, 415 F.3d at 1046–47. In their reply brief, Defendants accurately point out that the Ninth Circuit in *Doe v. Mann* declined to address the relationship between § 1914 of ICWA and the Full Faith and Credit Act in 28 U.S.C. § 1738, or the applicability of res judicata or issue preclusion. *See id.* at 1042 n. 5 ("We note that the Court–Appellees did not raise preclusion principles on appeal, and the Department of Social Services raised preclusion principles in only one sentence of its brief. As a result, we leave for another case the relationship between § 1914 and the Full Faith and Credit Act, 28 U.S.C. § 1738, and the principles of res judicata and collateral estoppel.").

Jumping Eagle also cited the Tenth Circuit's decision in *Roman-Nose v. New Mexico Dept. of Human Resources*, 967 F.2d 435 (10th Cir. 1992) (holding that, under § 1914 of ICWA, federal courts have subject matter jurisdiction to review state court decisions applying §§ 1911, 1912, and 1913). *Roman-Nose* will be discussed in more detail below.

Finally, Jumping Eagle cited *In re Adoption of C.D.K.* 629 F. Supp. 2d 1258 (D. Utah 2009). There, the relinquishment hearing for the mother's consent to termination of her parental rights happened within ten days of the child's birth. The district court invalidated the mother's consent because the hearing was held prior to the ten-day notice period required by ICWA. There was no

discussion of full faith and credit or preclusion issues in *In re Adoption of C.D.K.*, so the case does not provide any guidance on those issues.

In their reply brief, Defendants cited *Kiowa Tribe of Oklahoma v. Lewis*, 777 F.2d 587 (10th Cir. 1985), for the proposition that res judicata prohibits § 1914 claims in federal court after the same issue was raised in state court. In support of its holding that it does not appear Congress intended to make an exception to the full faith and credit requirement when it enacted ICWA, the Tenth Circuit stated:

> We cannot read § 1914's reference to "any court of competent jurisdiction" as the type of clear and manifest authorization that federal courts need before they upset the ordinary principles of federal-state comity embodied in 28 U.S.C. § 1738 and the Full Faith and Credit Clause. It seems rather to state simply where such actions may initially be brought. Regardless of whether we agree with the Kansas Supreme Court's construction of the ICWA, here we must honor the judgment it has rendered on the subject.

*Kiowa*, 777 F.2d at 592.

In *Roman-Nose*, the Tenth Circuit distinguished its ruling in *Kiowa*, stating that the ruling stood for the proposition that when a state court determines that *ICWA does not apply* to a particular custody proceeding, the decision is not subject to review in federal court. *Id.* at 438 n.2 (emphasis added). The Tenth Circuit said that it "express[ed] no opinion" whether § 1738 bars federal court review of an argument that the state court *misapplied ICWA*. *Id.* (emphasis added). The Tenth Circuit remanded *Roman-Nose* with instructions to allow the plaintiff to amend her complaint to state a specific ICWA violation.

Later in *Comanche Indian Tribe of Okla. v. Hovis*, 53 F.3d 298 (10th Cir. 1995), the Tenth Circuit reaffirmed its earlier holding, stating: "Under *Kiowa*, it is clear that § 1914 is not an independent ground to relitigate state court decisions." *Id.* at 304.

The parties did not cite the case, but the Court is aware of the Tenth Circuit's subsequent unpublished opinion in *Yancey v. Thomas*, 441 Fed.Appx. 552 (10th Cir. 2011). In *Yancey*, the biological father of an Indian child challenged the state court's termination of his parental rights, arguing that the state court violated ICWA. Though he had appealed several other rulings of the state court, the father failed to appeal the final order terminating his parental rights. *Id.* at 554. Instead, he filed an action in federal court seeking review of the state court ruling under § 1914 of

12

ICWA.  *Id.*  The Tenth Circuit held that the father's § 1914 action was barred by res judicata and that the state-court ruling must be given full faith and credit under § 1738.  *Id.* at 556–57.

The Tenth Circuit is the only court to have issued rulings on the interplay between § 1914 of ICWA and the Full Faith and Credit Act in 28 U.S.C. § 1738, and the applicability of res judicata to state court child custody proceedings.  There is no precedent on this issue in the Eighth Circuit.  This Court is not bound to apply the law of another circuit.  *See Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (reiterating that district courts in the Eighth Circuit are bound by the precedent of the Eighth Circuit Court of Appeals).  To the extent that the Tenth Circuit holds that federal courts  are always precluded by full faith and credit and res judicata from reviewing any and all alleged violations of ICWA, this Court is unpersuaded.  This Court agrees with the Ninth Circuit's holding in *Doe v. Mann* that federal courts are "court[s] of competent jurisdiction" allowed to invalidate state court actions, if necessary, upon a showing that such action violated a provision of §§ 1911, 1912, or 1913 of ICWA.  *See* 25 U.S.C. § 1914.  This Court concludes that § 1914 is an implied exception to the Full Faith and Credit Act in § 1738, allowing a federal court to refuse to give a judgment the preclusive effect to which it is otherwise entitled under state law if a procedural requirement of  §§ 1911, 1912, or 1913 of ICWA was violated.

At issue in this case is whether §§ 1911, 1912, 1913, and 1915 apply as a result of § 1914 to the temporary foster care placement of I.L.J.E.  That determination involves the filing of a petition with affidavits before the State Circuit Court entered an Order for temporary custody within three days after the Defendants learned of the mother's death. There are no transcripts of proceedings so this apparently involved presenting the petition and proposed order to the Court.

Even if the Defendants or the State Circuit Court had reason to know the child was an Indian, and they should have with the last name being Jumping Eagle, they would not have reason to know his tribal affiliation or if he was eligible for registration with the Tribe.  Not knowing tribal affiliation, under § 1912(a), notice of foster care placement proceedings has to be given by registered mail to the Secretary of the Interior who in turn must notify the Tribe by registered mail of the involuntary proceedings.

Next, § 1912(c) provides for a document discovery. § 1912(d) then required a showing to the court of remedial services and rehabilitative programs designed to prevent breakup of the Indian

13

family and that those efforts had been proved unsuccessful.  In the present case the immediate family was broken up with the mother's murder and the immediate arrest of the father.

Next, under § 1912(e) an expert witness has to be retained and familiarize herself with the situation before testifying.  All of these worthwhile but time consuming requirements demonstrate that the requirements of § 1911, § 1912, and § 1913 do not apply to a temporary foster care placement under these circumstances.

What is referred to as a "48-hour hearing" is used in abuse and neglect cases under SDCL chapters 26-7A and 26-8A.  These provisions were what was at issue in *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 613 (8th Cir. 2018) (holding that on-going state proceeding that might be affected by an action in federal court case requires abstention).[8]  The present case was not an abuse and neglect case, but rather was a temporary guardianship proceeding pursuant to SDCL 29A-5-210.  The statute allows the court to appoint a temporary guardian "upon a showing that an immediate need exists and that an appointment would be in the minor's best interests."

The South Dakota Supreme Court has found in this case that the temporary foster care placement was appropriate under South Dakota law.  That adjudication is res judicata with regard to this temporary foster care placement determination.  However, the provisions of § 1911, § 1912, and § 1913 do apply, but only to the subsequent foster care placement proceedings.  The exception to the federal res judicata which applies to § 1911, § 1912, and § 1913 does not under the terms of § 1914 apply to § 1915.  Accordingly, § 1915 does not provide a separate cause of action. *See* footnote 5 of the dissent in *Mississippi Band of Choctaw Indians*.  State cases are collected in *People in the Interest of M.D.*, 920 N.W.2d 496, 502 n.10 (S.D. 2018).

---

[8] In *Oglala*, the plaintiffs alleged that temporary custody hearings occurring within 48 hours of removal did not provide an opportunity for parents to contest the allegations; rather, parents were forced to wait 60 to 90 days for a meaningful evidentiary hearing. The district court granted declaratory and injunctive relief imposing procedural requirements at future 48-hour hearings, such as notice and right to counsel, and requiring the state courts to make certain findings at the 48-hour hearings.  *Id.* at 609.  The Eighth Circuit reversed, holding that abstention was warranted because the procedures imposed by the district court in that class action would "interfere" with ongoing state proceedings "by inhibiting the legitimate functioning of the individual states judicial system" and because the plaintiffs had not established that the state courts were unable to adjudicate the plaintiffs' federal claims.  *Id.* at 611–613.  *Oglala* is inapplicable in this case and abstention is unnecessary because the state proceedings have been completed.

**B.  No Violations of § 1912 Occurred During the Permanent Guardianship Proceedings**

Though the notice and appointment of counsel provisions in § 1912 did not apply during the temporary guardianship proceedings, those provisions were applicable to the subsequent permanent guardianship proceedings.[9]  Jumping Eagle does not dispute that notice was sent to him shortly after the temporary guardianship order was entered.  On April 10, 2017, Defendants filed a Proof of Notice of the Order appointing them as temporary guardians of I.L.J.E.  The Sheriff's Return was filed on April 12, 2017, showing service of the temporary guardianship order on Jumping Eagle.

Defendants filed a petition for permanent guardianship on June 16, 2017.  Notice of the petition for permanent guardianship was served by hand-delivery to Jumping Eagle by the Sheriff of Brookings County on June 22, 2017.  (Doc. 48-3.)  The Order for Hearing that also was served by hand-delivery to Jumping Eagle provided that interested persons could apply for permission to intervene in the proceedings.  (Doc. 48-1.)  Jumping Eagle's retained counsel filed a Notice of Appearance on his behalf on June 27, 2017.  There is no dispute that Jumping Eagle was represented by counsel during the permanent guardianship proceedings.  Jumping Eagle does not dispute that his lawyers were strong advocates of his interests throughout the permanent guardianship proceedings.  The record does not contain a request for counsel nor a showing of indigency.

On July 6, 2017, Defendants served the Oglala Sioux Tribe with the permanent guardianship petition.  (Doc. 38-10.)  The Tribe moved to intervene on July 25, 2017, noting that I.L.J.E. is an Indian Child as defined under ICWA and that ICWA applied to the proceeding.  (Doc. 38-14.)  The record does not establish when prior to July 25, 2017 the Defendants knew I.L.J.E. was an Indian child.

A brief status hearing was held on July 17, 2017, where the state court addressed visitation issues and extended the temporary guardianship for 90 days.  (Doc. 38-12.)  Jumping Eagle's lawyers appeared on his behalf at the hearing.  Dr. Sara Jumping Eagle also attended the July 17 hearing.  A hearing on the permanent guardianship was scheduled for October 6, 2017.

Jumping Eagle's counsel appeared at the permanent guardianship hearing on October 6, 2017, and Jumping Eagle appeared by ITV.  The parties stipulated that ICWA applied to the proceedings.  Jumping Eagle's lawyers and the Tribe's lawyer actively participated in the October

---

[9]  Sections 1911 and 1913 of ICWA are not at issue in this case.

15

6 hearing.  In sum, notice was provided with plenty of time to determine I.L.J.E. to be an Indian child, for ICWA to be applied, for an ICWA expert witness to be retained, and for all interested parties to prepare for the permanent guardianship hearing, present their desired witnesses and cross-examine the other witnesses.[10]

The state trial court's Findings of Fact and Conclusions of Law reflect that it complied with 25 U.S.C. § 1912(e) in determining that expert testimony by Luke Yellow Robe "supported by clear and convincing evidence" that custody of I.L.J.E. by Jumping Eagle would likely result in serious emotional or physical damage to I.L.J.E., "and therefore it is in the best interest of the minor child that the minor child be placed with the Petitioners who are the maternal extended family members."

Section 1912(a) provides that the parent shall be notified of the seeking of foster care placement by registered mail.  In the present case that service was made by personal service on Jumping Eagle by the Sheriff's office of Brookings County, South Dakota.  This variation in the service of notice is not a variance that warrants any relief.  No other variance from the requirements of 25 U.S.C. § 1912 occurred during the permanent guardianship proceedings.

### C.  Alleged Violations of § 1915 are Precluded

Jumping Eagle alleges that the substantive placement provisions in § 1915 of ICWA were violated by the state court's appointment of the non-Indian Defendants as guardians of I.L.J.E.[11]

The language of ICWA does not provide a private right of action for alleged violations of § 1915.  *See* 25 U.S.C. § 1914.  Section 1914 only authorizes an action for alleged violations of §§ 1911, 1912, and 1913.  *Id.  See also Doe v. Mann*, 285 F. Supp. 2d 1229, 1240-41 (N.D. Cal. 2003), *aff'd* 415 F.3d 1038 (9th Cir. 2005) (holding that there is no private right of action for alleged violations of § 1915); and *B.R.T. v. Executive Director of Soc. Serv. Bd. No. Dak.*, 391 N.W.2d 594, 601 (N.D. 1986) (same).

---

[10]  Based on the portions of October 6, 2017  hearing transcript filed by the parties in this case, the Court concludes that the lawyers for Jumping Eagle and the lawyer for the Tribe actively and zealously represented their clients at the permanent guardianship hearing.

[11]  As stated above, the provisions in § 1915 dictate where Indian children should be placed in foster and adoptive homes absent good cause to the contrary. 25 U.S.C. § 1915.

In addition, South Dakota's res judicata doctrine precludes relitigation of the issue whether Defendants are appropriate guardians of I.L.J.E.  Jumping Eagle, a party to the state court action, argued the same issue before the state trial court and the state supreme court.  Both state courts analyzed the placement preferences listed in § 1915.  The ICWA expert who testified at the guardianship hearing opined that "extended family" included non-Indians such as Defendants and that Defendants were part of I.L.J.E.'s tiospaye as defined by I.L.J.E.'s tribe.  The South Dakota Supreme Court affirmed the trial court's conclusion that Defendants were members of I.L.J.E.'s "extended family" under § 1915(b) and thereby given first placement preference under ICWA.  *In re Guardianship of I.L.J.E.*, 921 N.W.2d at 474 (citations omitted).  Jumping Eagle disagrees with the decision to appoint Defendants guardians of I.L.J.E., but ICWA does not authorize this Court to review that decision as to § 1915.

All four of South Dakota's res judicata requirements are present.  First, the South Dakota Supreme Court's decision is a final judgment on Jumping Eagle's claim that placement of I.L.J.E. with Defendants violates § 1915.  Second, the question decided in state court is the same that Jumping Eagle asks this Court to decide in this proceeding.  Third, the parties are the same because Jumping Eagle was a party in the state court proceeding and he is a party in this case.  Finally, Jumping Eagle had a full and fair opportunity to litigate the issue in state court.  Because the South Dakota Supreme Court's judgment affirming appointment of Defendants as guardians of I.L.J.E. satisfies the requirements of South Dakota's res judicata doctrine, the Full Faith and Credit provision in § 1738 requires this Court to give that decision the same preclusive effect as it would have under South Dakota law.  Therefore, Jumping Eagle is precluded from relitigating the guardianship issue in this Court except as to the application of §§ 1911, 1912 and 1913.  Accordingly, Defendants are entitled to judgment as a matter of law on Jumping Eagle's § 1915 claim.[12]

---

[12] The Defendants also argue that this Court lacks subject matter jurisdiction over Jumping Eagle's § 1915 claim under the *Rooker-Feldman* doctrine.  The Eighth Circuit has held that it is permissible to by-pass the problematic jurisdictional issues under *Rooker-Feldman* in order to reach a preclusion question that disposes of the case.  *See In re Athens/Alpha Gas Corp.*, 715 F.3d 230, 235 (8th Cir. 2013).

17

### D. Claim Regarding Appearance by Interactive Video Conference is Precluded

Jumping Eagle alleges that his due process rights were violated when he was restricted to appearing by ITV at the permanent guardianship hearing on October 6, 2017.[13]  Jumping Eagle asserts that he was not able to privately communicate with counsel during the hearing, and he was unable to assist with cross-examination of adverse witnesses, or the direct examination of witnesses on his behalf.  Defendants contend that Jumping Eagle's lawyer did not ask to speak to Jumping Eagle during that October 6, 2017, evidentiary hearing, and that Jumping Eagle was able to hear, observe, and participate in the hearing in accordance with the law, though he had a difficult time hearing the last witness, Katie Lovstad.

As with the § 1915 claim, ICWA does not provide a private right of action for alleged violations of due process.  *See* 25 U.S.C. § 1914.  As discussed above, § 1914 only authorizes a private right of action in this court for alleged violations of §§ 1911, 1912, and 1913 of ICWA.  *Id.* A parent's personal appearance at a hearing is not a procedural requirement under §§ 1911, 1912, or 1913.  Thus, Defendants are entitled to judgment as a matter of law on Jumping Eagle's due process claim.  No separate due process claim was made under 42 U.S.C. § 1983.

Even if this Court had jurisdiction over the due process claim, the Full Faith and Credit Act in 28 U.S.C. § 1738 would require the Court to determine whether South Dakota preclusion principles apply.

An examination of the state-court record and the South Dakota Supreme Court's opinion reveals that Jumping Eagle's right to appear in-person at the October 6, 2017 hearing was fully and fairly litigated in state court.  Jumping Eagle argued the same issue before the South Dakota Supreme Court:

---

[13] The parties do not cite and the Court is not aware of a provision in the ICWA requiring parents to appear in person, or disallowing appearance by video, at ICWA-related proceedings. Jumping Eagle cites a South Dakota statute that allows a parent to appear telephonically at a child custody proceeding if the parent is incarcerated. *See* SDCL 25-5A-14. Jumping Eagle suggests that this statute allowing telephonic appearance might not apply to ICWA hearings because the statute contains language stating that "due regard shall be given to the Indian Child Welfare Act" if it is applicable.  The Court does not interpret SDCL 25-5A-14 as prohibiting incarcerated parents from appearing by video at child custody hearings if ICWA applies. To the extent Jumping Eagle is attempting to argue that his appearance by video violated a state or federal statute, that argument is rejected.

Irving insists he has an absolute due process right "to be personally present in the courtroom." We disagree. Many courts have held that prisoners prohibited from participating in child custody proceedings are not denied due process when the prisoner is given an opportunity to cross-examine witnesses through counsel and to testify by deposition or other alternative means. *See*, *e.g.*, *In re C.G.*, 885 P.2d 355, 357 (Colo. Ct. App. 1994) (finding no due process violation in a proceeding involving the termination of parental rights); *Pignolet v. State Dep't of Pensions & Sec.*, 489 So.2d 588, 590–91 (Ala. Civ. App. 1986); In re J.S., 470 N.W.2d 48, 52 (Iowa Ct. App. 1991); *In re Randy Scott B.*, 511 A.2d 450, 452–54 (Me. 1986); *In re Raymond Dean L.*, 109 A.D.2d 87, 88-90, 490 N.Y.S.2d 75 (1985); *In re L.V.*, 240 Neb. 404, 482 N.W.2d 250, 257–59 (1992); In re Quevedo, 106 N.C. App. 574, 419 S.E.2d 158, 160–62 (1992); *In re F.H.*, 283 N.W.2d 202, 206-09 (N.D. 1979); In re Rich, 604 P.2d 1248, 1252–53 (Okla. 1979); *In re Darrow*, 32 Wash. App. 803, 649 P.2d 858, 859–61 (1982). Other courts have also found no due process violation in civil cases where the circuit court ordered a prisoner to appear by video conferencing rather than personally, although courts have cautioned that the decision to conduct civil proceedings involving an inmate by video conference should be carefully considered. *See Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005); *Vincent v. MacLean*, 166 N.H. 132, 89 A.3d 1208, 1212 (2014).

*Matter of Guardianship I.L.J.E.*, 921 N.W.2d at 471–72.

After considering Jumping Eagle's claim that his rights were violated by requiring his appearance by ITV, the South Dakota Supreme Court rejected it:

We see no due process violation in this case. Irving made only a general due process objection to the denial of his request to appear in person by mentioning that his ability to cross-examine witnesses would be limited. Further, his attorneys were personally present in the courtroom throughout the hearing, and he made no claim before the circuit court that he was unable to adequately hear, respond, or present his claims to the circuit court. Also, at the time of the hearing, he had pleaded guilty to a violent offense and was housed approximately one hour from the courthouse. Under these circumstances, Irving has failed to show either a due process violation or an abuse of discretion in denying his request to appear in person. He has also failed to show prejudice in that any purported difficulties in appearing via ITV changed the outcome of the proceeding.

*Id.* at 472.

All four elements of South Dakota's res judicata standard are met. First, the South Dakota Supreme Court's decision is a final judgment on Jumping Eagle's claim that his rights were violated when he was required to appear by ITV at the permanent guardianship hearing on October 6, 2017. Second, the question decided in state court is the same in this proceeding because there was an

"identity of the facts creating the right of action and of the evidence necessary to sustain each action." *In re Athens/Alpha Gas Corp.*, 715 F.3d at 238 (quoting *Sanders Confectionery Prod., Inc. v. Heller Fin., Inc*., 973 F.2d 474, 484 (6th Cir. 1992)).  Third, the parties are the same because Jumping Eagle was a party in the state court proceeding and he is a party in this case.  Finally, Jumping Eagle had a full and fair opportunity to litigate the issue in state court.  Because the South Dakota Supreme Court's judgment satisfies the requirements of South Dakota's res judicata law, the Full Faith and Credit provision in § 1738 requires this Court to give that decision the same preclusive effect as it would have under South Dakota law.  Therefore, Jumping Eagle's claim that his due process rights were violated by being required to appear by ITV at the hearing on October 6, 2017 is barred by res judicata.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted.  Accordingly,

**IT IS ORDERED** that the motion for summary judgment by Defendants Lloyd Warren and Katie Warren, Doc. 36, is granted.

Dated this 9th day of February, 2021.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

20